Fulton County Board of Commissioners Okay, Mr. Ziegler. Good morning and may it please the Court. I'm Conrad Ziegler representing the appellant, Mr. Brandon Fulton, in this case. Starting at first principles, a claimant needs two things to get into federal district court. The first is federal jurisdiction and the second is a cognizable federal cause of action. And the Congress of the United States has long ago provided a right of action for someone who is injured by a person acting under color of law in violation of federal law. And the Fulton, as I understand it, your argument is that the board committed a taking, the board being a person, which is a creature of state law, a municipal board that allegedly deprived your client of property, but that claim under Section 1983 failed and your argument is that the Constitution itself somehow creates something even more that notwithstanding Congress's power under Section 5 of the 14th Amendment to pass enforcement legislation, something that it has done, regulating this kind of cause of action with its own statute, with a statute that we have long borrowed from state law, that we're to decide that there's an independent, constitutionally created takings claim against the board. Is that right? That's correct, Your Honor. And the reasons for that are that in 1871, Congress did in Act 1983. Why doesn't that confine our analysis? I mean, ordinarily when there's an express cause of action, we don't have an implied right of action. Well, the reason for that is the United States Supreme Court says that because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time. And so there's an independent. You can under Section 1983. You have legislation that authorizes that very suit. There's no doubt about that. That's correct. And certainly we're not arguing that somehow 1983 is not an appropriate remedy here. It is an appropriate remedy, but there's also an outside of 1983 remedy that is equally as appropriate. So are you saying that the constitutional right to just compensation for a taking is broader than the right that 1983 allows you to collect on? Because if it's not, right, if it's the same, then why isn't what the Chief said the answer? But if it's broader, then perhaps that would make sense. Is there some extra money that you would get under this constitutional claim that 1983 doesn't allow? The, I don't think there's any extra external benefit there other than not having to go through the Monell analysis. Right. So that's what I'm asking you more specifically. So more to the point, are you saying that Monell makes the entitlement to just compensation narrower or on narrower terms than you would otherwise be entitled to if we went directly under the takings clause? That's correct. Because Monell confines the relief to something that is, at least for a municipality, something that is policy in practice. So that narrows the relief that the Fifth Amendment would grant. In the example I'll use is Why is that? Why is that? Because it seems to me that the, if we entertain the idea that there's a direct action provided by the Constitution, that it would be against the entity that the Constitution itself names, which is the State. You're not suing the State. You can't sue the State, in fact, in Federal court because of the Eleventh Amendment. Now, it might be that the Constitution obligates the State to provide for an inverse condemnation action in State court, but we don't have a situation where you're seeking relief against the State government. You're doing it against a separate entity, and what Monell is trying to do is ensure that that entity is actually the cause of your alleged constitutional violation. That's correct, that Monell protects a municipality against a rogue employee or a low-level employee that just makes a mistake, but that's not as broad, that's far narrower than what the Fifth Amendment provides. But the text of the Constitution doesn't refer to municipal boards or any other person acting under color of law. Congress, through enforcement legislation, has actually broadened the right by providing you a takings claim against them. Isn't that right? That's correct. The Fourteenth Amendment does that, and the Fourteenth Amendment . . . But the Fourteenth Amendment only refers to a State. That's correct, but it is that State has been interpreted since the Fourteenth Amendment that the . . . You didn't sue the State. You sued a person acting under color of law. That's what a board is. That's what a municipal board is. It's not the State. It's separate from it. It's a political subdivision of the State. It's a creature of State law, right? That's correct. Yeah, but so in essence, what Congress has actually done is provided you, through 1983, a broader remedy, isn't it? I don't believe it's broader, and the reason for that is . . . Well, let me ask you a question. Is the . . . does the municipality . . . doesn't the municipality derive all of its takings power from the State's delegation of it to it through the Georgia Constitution? That's correct. So how could the takings ability of the municipality, which derives its entire takings ability from the State's delegation of its own authority to do takings, be narrower? How can the right against the municipality be narrower than the right against the State when the municipality derives all of its power to do this from the State's delegation? Well, I think the answer to that question can be derived really through the history and tradition of how Fifth Amendment claim . . . Fifth Amendment takings claims in 1983 have intertwined over the years. When you actually look at Monell in then-Associate Justice Rehnquist's dissent, he says, look, this is the very first time somebody has applied 1983 to a takings claim. That's new. And if you look at the time period between 1961 when Moreau v. Pape is issued by the Supreme Court, which says you cannot have municipal liability for anything under 1983 and Monell . . . But the Supreme Court later determines that was wrong. That's correct. They go back and revisit the understanding of 1983. 1983 wasn't amended by Congress. They just changed their interpretation and said, you know, we just got it wrong in Monroe. And in fact, a municipality can be, or municipal corporation, corporate body, can be a person within the meaning of 1983, right? That's correct. So they're telling us that's the way it should have always been understood. That's the way . . . that's what it originally meant, right? Yes, but they're also signaling that the takings claims didn't go away during that period at all and, in fact, really hadn't . . . yeah, I mean, takings claims were federally cognizable between 1961 and 1978 all day long. Justice Rehnquist cites four or five cases in his dissent. We've cited, I think, four or five additional cases that happened during that period in our brief. And before that, it's not that the very first time a takings claim was federally cognizable was in Mon-El. People did it all the time. I just have a very, excuse me, basic question. This is what I thought the panel was trying to understand. What does a private right of action under the Fifth Amendment get you that Section 1983 will not? The effect of sort of the damages award at the end is . . . Exactly the same. Exactly the same. That's correct. But what it does is it lessens the restriction. It's a broader right. It might get you the same thing, but the avenues toward that same relief are broader. And how? Because there's not . . . the example that . . . And if so, if that's your argument, then are you saying that a rogue employee could actually obligate the state-created entity to pay for a taking? Well, if you allow me to use this as an example, I think this gives a better illustration than I'm articulating. Imagine a municipality is building a reservoir. And they say, look, you know, this is where we think the reservoir will fill up to. And they get it wrong. It floods somebody's house. I don't think there'd be any question that that would be a cognizable takings claim. But what's interesting, if you go through the Monell analysis, that's not policy or practice. It's actually the opposite of policy and practice because they decided that shouldn't happen. And so it wasn't . . . Well, no, I don't understand that hypothetical. They might not have understood that this was going to be a consequence of their mistake. But their decision to build the reservoir that caused it was clearly something that fell within the policy or custom showing of Monell. And you're hypothetical. That's correct. But the damage that actually happened would be outside of that policy or practice and wouldn't be contemplated by that because . . . That's not what the policy or custom requirement is about. It's not about the damages. It's just about ensuring that whatever the violation was is actually attributable to the entity. That's correct. And, but there's . . . Well, so the policy and practice here, let's say we're proceeding under Section 1983, is that the county seizes animals when their owners are considered to be engaging in animal cruelty. Is that the policy or the practice or custom that you're challenging, that you were challenging here for your compensation request? What we're challenging is the failure to return at the back end. I mean, probable cause standards are extraordinarily low to start off with.  But once the prosecution had been completed and been dismissed, then that's where the obligation to return the horses started. And it was their policy and practice not to do so. Okay. And I see my time's up. It is. You've saved four minutes, Mr. Ziegler. Let's hear from Mr. Plott. Thank you, Your Honor. Good morning. May it please the Court. My name is Matthew Plott, and it's my honor to represent the appellee, the Fulton County Board of Commissioners, in the present appeal. The present appeal goes to the preliminary question of any civil litigation. Has the agreed party pled a cognizant cause of action? In this case, the district court properly recognized that appellant failed to plead such a cognizant cause of action when he attempted to proceed outside of 42 U.S.C. 1983 and accordingly correctly dismissed his case. Now, in an effort to salvage his claim, the appellant, Brandon Fulton, is asking this court to create out of whole cloth an implied cause of action under the takings clause of the U.S. Constitution entirely divorced from the parameters of 42 U.S.C. 1983. This court should decline to find an implied cause of action because Congress has already spoken and created a remedial structure for him to bring such a claim, and that is 42 U.S.C. 1983. Would you agree, though, that, and I'm not saying whether it is or isn't, but if the things that you have to satisfy under Monell make your access to the remedy less than it would be if there is a direct action under the Constitution, then he would be entitled to proceed under the Constitution? Well, I think that raises an interesting hypothetical question, but in this case it doesn't because the remedy afforded by the Fifth Amendment is compensation as recognized by the U.S. Supreme Court in Nick v. Township, Scott. I'm not talking about the compensation. I agree. The compensation would be exactly the same, but if he would be entitled to, if Monell places an extra restriction on whether, let's say he's got to jump through an additional hoop to get compensation, that he wouldn't have to jump through if he could go directly under the takings clause through the Fourteenth Amendment. Then, my question for you is, doesn't that mean, then, that Monell is not a sufficient remedy if there is a direct cause of action under the takings clause? Well, to your final point, our central argument is that there is not an independent, enforceable private cause of action under the Fifth Amendment. However, as addressed during the questioning of appellant, the point of the Fifth Amendment and the point of Monell is to make sure that a rogue employee isn't binding the county based on their actions in this case, and so that's the reason for the policy, practice, and custom that is universal. Is there any suggestion in this case that there was a rogue employee who was making decisions and attempting to bind the county through his rogue decisions? Well, in this instance, the case was dismissed at the motion to dismiss stage, and so that was not developed, and that was something that the district court pointed out in its order, that based on appellant's pleading, it was unclear on that issue. And so I think that that raises an interesting hypothetical question, but it's not an issue in this case. And it was because of the bare-bones nature of the allegations asserted in the complaint that it was dismissed at the motion to dismiss stage. And so there are several flawed premises that appellant relies on to assert that the takings clause in and of itself creates an independent cause of action. First, while appellant is correct that the Fifth Amendment has been referred to as self-executing, that does not mean that there is implied cause of action within the Fifth Amendment itself. Neither the U.S. Supreme Court nor any other circuit court of appeals in this country has ever interpreted the primary case that appellant relies on, First English Evangelical Lutheran Church of Glendale, to hold that the takings clause creates an independent cause of action for damage in and of itself. Can I ask you another question? Let's just, this is a hypothetical. As you know, the Supreme Court is considering a very similar issue in W.A. with respect to the State. So my question for you is just assume for purposes of this hypothetical that the Supreme Court holds that there is a direct cause of action against the State under the Fifth Amendment, under the Fourteenth Amendment, you know, under the Fifth through the Fourteenth. Okay, we've got it there. And if that's the case, then would, again, sort of the same question I asked your friend on the other side of the aisle, and that is the municipality derives all of its taking power from the State's delegation of its own taking power to the municipality through the grant in the Georgia Constitution. Isn't that right? Yes, Your Honor. Okay, so how could it be that a person could have less entitlement to how they would get the just compensation, right? Their right would sort of be smaller in a way because they have to jump through an additional hoop of Monell than it would be under the takings clause. Like, how could the municipality, how could the right be smaller against the municipality than against the State if the municipality gets all of its takings power from the State? Well, Your Honor, I think this goes to the question of when courts find an implied cause of action within the Fifth Amendment itself. And I think Ziegler v. Abbasi, the U.S. Supreme Court's case from 2017, goes to the central about when a party seeks to assert an implied cause of action under the Constitution itself, separations of powers principles are or should be central to that analysis. So if the U.S. Supreme Court is to determine that there is an implied cause of action against States in the Duvalier case, which again is a hypothetical ruling. Duvalier is a case against the State government. Correct. That was an issue, the suit was commenced as an inverse condemnation action in State court, right? Correct, Your Honor. Was removed to Federal court by the State and therefore whatever Eleventh Amendment immunity the State government had from that claim was arguably waived, right? But very different kind of context, right? And there is no legislation but from Congress that actually authorizes that sort of suit. Is that right? And so the question is really this suit commenced in State court as an inverse condemnation action. The Constitution might in fact provide that direct right against a State government. Correct, Justice Breyer. So I agree with everything that's been said. But my hypothetical is, is there, you know, let's say that the Supreme Court doesn't decide it on the ground that the State waived its immunity by removing to Federal court. And because it could do that. I mean, it might not. It may. Who knows? But let's say that the Supreme Court were to conclude that there is a direct right of action against the States under the takings clause through the Fourteenth Amendment. And I think this goes to Chief Judge Pryor's point that here Congress has spoken by enacting 42 U.S.C. 1983. The question presented in Devalier specifically says absent any legislation authorizing the action, right? You can't sue a State notwithstanding even the Eleventh Amendment question because under Section 1983 because the Supreme Court has held that a State is not a person within the meaning of Section 1983, right? That's exactly correct, Your Honor. Right. But again, my question is, how can it be possible that if there's a right against the State directly, there can be a lesser right against its delegee? Do you understand what I'm saying? I do understand your question. I think it's a twofold answer. One, there's the statutory scheme created by Congress. So Congress can limit a constitutional right? Well, I think it can put parameters on the ability to bring a cause of action to enforce that right. For example, it can provide a statute of limitations. Correct, Your Honor. And so I think that also goes to what the U.S. Supreme Court, in order to reach that if they don't rule on the immunities issue, is they would have to find an implied cause of action, which the courts have recognized that that's an incredibly disfavored judicial activity at this point. And so particularly when there is a statutory scheme, in this case 42 U.S.C. 1983, that gives an agreed party who alleges a taking has been committed to bring such a claim. And what's dispositive in this case is in Appellant's brief, he himself concedes that there was no policy, practice, or custom here, which is fatal to his claim. And so the district court did correctly determine that this case should be dismissed. Let me ask you this. You raised as an alternative ground, and you did so in the district court as well, the case where we have implied rights of action to enforce constitutional rights, we also borrow the State statute of limitations. Is there any reason to think that even if there were a direct right under the Constitution, the result would be any different here? No, Your Honor. Under the statute of limitations, this case would be brought outside of the statute of limitations, which would be fatal to his claim. Well, why is that, though? It seems to me that it would be brought exactly on time or in the nick of time, maybe. It seems to me that what is being complained of is the keeping of the horses after the case was dismissed and the 30 days ran for it to become, you know, for the municipality not to change its mind. And so that date was May the 5th of 2018. He filed on May the 5th of 2020. Why is that not right? And I appreciate you bringing up that point, Judge Rosenbaum, because I think when you read that State statute that he cites, it's when a defendant is found guilty that 30 days is what is applicable. And here the appellant, Brandon Fulton, was not found guilty. In fact, the decision was made not to prosecute him. So that 30-day window that's referenced by appellant does not even seem to apply in this instance. However, in the interest of candor in preparing for today's oral argument, we did become aware that the statewide judicial emergency in Georgia had been issued around the time that this lawsuit was filed. So in this case, if the April 5th, 2018, that the charges, the decision was made not to prosecute them, that was done according to appellant on April 5th, 2018, the two-year statute of limitations would go to April 2020. At that point, the statute of limitations was told in the State of Georgia. However, if the earlier two of the two dates are used that are pled by appellant, the bond order from June of 2016 or the April 22nd, 2017 seizure of the horses are used, the two-year statute of limitations would have run even before the judicial emergency related to COVID. Just to make sure I understand, I very much appreciate your candor. Um, if, if it runs from the time that the charges were dismissed, are you saying that the statute was told during that period and he would have been within the statutory period? So the statute of limitations was told in 2020 due to the judicial emergency. And so it was told from, I believe it was March into the late summer of 2020. So the answer is yes. Yes, if the April 2018 date is what governs and then the two-year statute of limitations in Georgia, he would have filed it during the period in which the statute of limitations was told. However, under NIC v. Township of Scott, if this is actually a takings claim, which is an entirely other issue, because what though this is a taking because there was no for public use component is appropriate. NIC v. Township of Scott stands for the proposition that it's when the taking actually occurs. And so we would submit that that would be as pled by appellant that April 2017 seizure, if not the earlier 2016 bond order. Can you expand upon your point about whether takings occurred in the first place? Because that was also my question. Again, my understanding is that Mr. Fulton was accused of animal cruelty, and that's the reason why the animals were taken from him. We don't know if a deal was cut that resulted in the claims being dismissed, but what are your arguments as to why this wouldn't constitute a taking? So under the Fifth Amendment, as applied to the states of the Fourteenth Amendment, has to be a taking for public use. As pled by appellant, there is no taking for a public use in this instance. Traditionally, we think of takings as illustrated by my colleague earlier this morning when something like a dam is built and property is taken for a public use. However, in this instance, horses were seized. So that — whether this is actually a taking, it does not appear to be based on the facts in this record, which would be another fatality. But I think the district court went to the preliminary question of is there even a cause of action, which is a fundamental question, and they determined that there is not a cause of action under the Fifth Amendment itself. So whether this was a taking or not, there's no cause of action independent of 42 U.S.C. 1983. If there are no further questions. And then I guess my last point is I also am a bit troubled, if Judge Rosenbaum is troubled, by the idea that the Supreme Court could find a private right of action against the state. And as she articulated, the municipality has delegated those duties or responsibilities, but now you're saying, to the benefit of the municipality, would not be delegated the defenses that the state enjoys. Is that indeed your position? MR. ROSENBAUM. And this goes back to what Chief Judge Pryor mentioned and what I was stating earlier, is that here Congress has created a remedial structure. And by creating that structure that put parameters on this implied right, on this right to bring claims against local and municipal governments, that limitation would apply but might not necessarily apply against states. And so I don't think DeValier, no matter which way the Court does it. JUSTICE ALITO. Yeah, Congress, because Congress hasn't created one against states. MR. ROSENBAUM. Correct. If there are no further questions, I would ask that this Court affirm the district court's decision. Thank you. JUSTICE ALITO.  Thank you, Mr. Platt. Mr. Zegler, you saved four minutes. MR. ZEGLER. Thank you, Your Honor. Just to address the statute of limitations issue, first of all, the district court specifically reserved ruling on that issue. So that issue is— JUSTICE ALITO. We can affirm for any reason supported by the record, Mr. Zegler. MR. ZEGLER. That's correct, Your Honor. But as Judge Rosenbaum has calculated, we are within that statute of limitations. And to the extent— JUSTICE ALITO. That depends on when the seizure occurred. MR. ZEGLER. That's correct. And the seizure, as we've alleged in the original complaint, the seizure is not the original taking of the horses because that was taken under police power and that was taken pursuant to probable cause. Probable cause is extraordinarily low. We concede there was probably probable cause to have seized the horses. But once the charges were dismissed, at that point, the State has no interest in retaining the horses. And so that's when the taking occurred. If they had just returned them, we wouldn't be here. But that's where the actual seizure adverse to Mr. Fulton's property interest in those horses started, was once that 30-day period expired and then the horses weren't returned. JUSTICE ALITO. Well, the municipality has an interest. Again, they originally seized the animals pursuant to, as you said, probable cause. But are you saying that the municipality does not have the right to retain or to hold on to the animals? MR. ZEGLER. That's correct. If the State itself has dismissed the criminal charges, which gives the entire pretext for seizing the horses in the first place, then the State's or municipality's interest evaporates at that point. They have no interest or ability to retain that property adverse to Mr. Fulton's property rights once those charges have been dismissed. JUSTICE ALITO. Tell me this. We explored this earlier. What, if there were a right of action provided by the Constitution itself against the Board, what is it that you would be able to show that would entitle you to recover for the taking that 1983 doesn't? How is it that you would be able to establish that the Board is liable for the taking directly under the Constitution in a way that 1983 doesn't?  The ultimate remedy is . . . I'm not talking about that. I'm not talking about that. We'll assume for the purposes of this question that the remedies are coextensive because you conceded that earlier. Now, what is it that you're going to show that proves that the Board is liable for the taking under the Constitution that you can't show under 1983? And the Supreme Court in First English, which was reiterated by Nick, specifically says that statutory recognition of a 1983 right is not necessary to enforce the right granted by the Constitution. That's not my question, okay? How is it you're going to establish liability under the Constitution in a way that 1983 doesn't allow you? In other words, you have to pick up on something that 1983 requires you to do that you wouldn't be required to do if you went directly under the Constitution. Is there . . . Yes. You need to show us why the Constitution wouldn't require at least the same thing. Right, the advantage to going just under the Fifth Amendment is not having to overcome the policy and practice defense. How would you establish then that the Municipal Board is actually the cause of the violation? Wouldn't you have to establish causation? Wouldn't you have to establish that they caused the taking? That's correct. The bond order itself gave Fulton County the responsibility to take care of the horses, and so that's very clear. But also, too, this was dismissed on Under 12b-6, so we have not had a chance to develop that record on who exactly made those decisions, what actually happened to cause this thing we're complaining of. That's sort of a closed box to us right now. But on remand, those issues could certainly be explained. And Fulton County would have to explain them. But how we started here was we were wondering how it could be . . . So if Congress has actually provided a right of action ordinarily, that's the end of it. We respect Congress's enforcement power, and we use the scheme that it provides. If we entertain your hypothetical argument that the Constitution itself creates something different, I'm just wondering, before we send it back to the district court to litigate this, what is it that the district court is supposed to understand that the Constitution provides that's somehow different? 1983 covers a whole lot of different causes of action, and the Takings Clause is different because it's in the Constitution, and it is an implied right of action, but it's . . . the Fifth Amendment itself . . . What is the test? What is the test, or what are the elements under a private right of action under the or that the municipality would have to show in order to defeat your claim? We would have to show that the horses were taken. They were taken for the public good of the public interest, and that they had some value to them. But wouldn't you have to show that the municipality . . . you'd have to show that the municipality was responsible for taking the horses. And the question is, how do you show that if not through policy or custom? That's what . . . I think that's what the chief is asking you. And so, because you're saying that Monell doesn't work for you because it's stricter than you would otherwise have to show. And so, the question is, since you'd have to show that the municipality was responsible for taking the horses, that is, somehow they had made a decision to do it, what is it that you would have to show? Right. So, it goes to the Bond Order 8 question here. And both sides acknowledge that the responsibility of taking care of those horses was given to Fulton County, through Fulton County Animal Control Services. That directive was issued directly to the county and no one else. Okay. Thank you, Mr. Siegler. We have your case, and we'll be in recess until tomorrow. Thank you. Thank you.